**Kenneth FUNKE, Plaintiff,**

v.

**SORIN GROUP USA, INC. and Does 1–10, inclusive, Defendants.**

**Case No.: SACV 15–01182–CJC(ASx)**

United States District Court, C.D. California, Southern Division.

Signed November 24, 2015

---

29. '319 Patent claims 13–23 and 26–28; '374 Patent claims 1–4 and 6–7.

1020

Matthew Ramon Lopez, Ramon R. Lopez, Troy A. Brenes, Lopez McHugh LLP, Newport Beach, CA, for Plaintiff.

Matthew L. Marshall, Wendi J. Frisch, Morris Polich and Purdy LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

In his Complaint, plaintiff Kevin Funke alleges that he sustained injuries as a result of product defects in the Sorin Mitroflow Tissue Valve (the "Valve"), a medical device designed and manufactured by defendant Sorin Group USA, Inc. ("Sorin"). Mr. Funke alleges causes of action against Sorin for Negligence; Strict Products Liability—Failure to Warn; Strict Products Liability–Manufacturing Defect; and Negligent Misrepresentation, and seeks punitive damages under California Civil Code § 3294. (Compl.¶¶ 30–68.) Sorin has moved to dismiss all of Mr. Funke's causes of action on the basis that each is preempted by federal law. For the reasons discussed below, the Court DISMISSES Mr. Funke's complaint and grants him leave to amend.

### II. BACKGROUND

The following facts from Mr. Funke's Complaint are accepted as true for the purposes of this Motion to Dismiss. Mr. Funke underwent aortic valve replacement surgery on July 9, 2008. (Compl.¶ 23.) A Mitroflow Tissue Value, manufactured by Sorin, was installed during the operation. (Id.) Mr. Funke was told to expect that the Valve would last at least ten years before needing to be replaced, but about five years after the Valve was installed, it failed and Mr. Funke was diagnosed with an aortic murmur. (Compl.¶ 24–25.)

The Valve consists of a single piece of bovine pericardium sewn into a plastic frame and covered with polyester fabric. (Compl.¶ 9.) Mr. Funke asserts that Sorin was aware of a large number of reported events where the Valve failed within five years of placement, and was "aware that this was being contributed to by manufacturing processes and design issues relating to the cross stitches at the stent post and the darcon [sic] fabric, leading to abrasion, rubbing, fatigue damage, and ultimately device failure." (Compl.¶ 19.) Mr. Funke's Valve in particular was found to have "structural valve deterioration with calcification at the commissure posts as well as some degree of erosion on the leaflets." (Compl.¶ 26.) After the operation, the Valve removed from Mr. Funke was sent to Sorin for investigation into the reason for the failure. (Compl.¶ 27.) Sorin has ignored Mr. Funke's requests for information concerning the results of that investigation. (Id.)

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir.2011). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, the pleading "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the complaint must contain sufficient factu-

al matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court has been careful to note that the "plausibility" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's legal claims. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955; *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully.").

In light of *Twombly* and *Iqbal*, the Ninth Circuit summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988), or where the allegations on their face "show that relief is barred" as a matter of law. *See Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (finding dismissal appropriate when the statute of limitations prevents relief).

In deciding whether to grant a motion to dismiss, courts must accept as true all well-pleaded factual allegations in the pleading under attack. *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

The court's plausibility analysis is a "context-specific task," and it calls on the court to rely on its experience and to exercise common sense. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

When ruling on a motion to dismiss, a court must normally convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56 if the court considers evidence outside of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). However, a court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908.

## IV. ANALYSIS

Sorin moves to dismiss on the ground that Mr. Funke's state law claims are preempted by the Medical Device Amendment ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA"). The MDA contains an express preemption provision:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The Supreme Court set the framework for analyzing express preemption under the MDA in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321–22, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). Under the *Riegel* framework, courts must first determine whether the FDA has es-

tablished requirements applicable to the device at issue. Courts must then determine whether the plaintiff's claims are based on state requirements regarding the device that are "different from, or in addition to" the federal requirements, and that relate to safety and effectiveness. *Id.* If so, the MDA expressly preempts the plaintiff's claims.

■ The MDA does not, however, prohibit states from providing remedies for state law claims premised on violations of FDA regulations. *Id.* at 330, 128 S.Ct. 999. The state duties in that situation are "parallel" to the federal duties, and claims based on the parallel state duties are not preempted. *Id.*; *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1228 (9th Cir.2013) (en banc) ("[T]he MDA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA."). These parallel state law requirements can be established by either statute or common law. *Riegel*, 552 U.S. at 324–25, 128 S.Ct. 999.

■ The MDA also impliedly preempts certain claims that are based solely on violations of federal requirements themselves: it prohibits suits by private litigants to enforce the provisions of the Act, instead requiring that all such actions "shall be by and in the name of the United States." 21 U.S.C. § 337(a). In *Buckman Co. v. Plaintiffs' Legal Committee*, the Supreme Court interpreted this provision as impliedly preempting claims seeking to enforce an exclusively federal requirement not also grounded in state law. 531 U.S. 341, 352–53, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001); *see Stengel*, 704 F.3d at 1229–30. Together, express preemption and im-

plied preemption leave only a "narrow gap" through which the plaintiff's claims must fit in order to survive. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir.2013).

■ The threshold prong of *Riegel* — whether the FDA has established requirements for the device in question—is plainly met here. Because it is classified as a Class III Medical Device under the PMA, the Valve underwent the Premarket Approval ("PMA") process through which the FDA imposes specific requirements regarding its safety and effectiveness. (Dkt. 10–1, Def.'s Ex. A, FDA's Premarket Approval Summary, PMA No. P060038, for the Mitroflow Tissue Valve, October 23, 2007.)[1] In addition, the Valve is subject to continuing regulation by the FDA in areas such as its manufacturing process. (*Id.*) This is sufficient to establish *Riegel*'s threshold prong. *Riegel*, 552 U.S. at 322, 128 S.Ct. 999 ("Premarket approval ... imposes 'requirements' under the MDA."). The second prong of *Riegel*, whether Plaintiff's claims are based on any requirement of state law that is "different from, or in addition to" federal requirements and relate to safety and effectiveness, must be addressed separately for each of Mr. Funke's claims.

## A. Strict Liability—Failure to Warn

Mr. Funke's state law claim for failure to warn is expressly preempted to the extent it is based on the theory that Sorin should have given warnings different than those approved by the FDA. Allowing Mr. Funke to proceed on such a claim would impose requirements "different from, or in

---

1. Sorin has requested that the Court take judicial notice of the FDA's PMA Summary for the Mitroflow Tissue Valve. (Dkt.11.) The Court hereby takes judicial notice of that document because it is a public document available on the FDA website, and therefore

"capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Houston v. Medtronic, Inc.*, 957 F.Supp.2d 1166, 1170 n. 1 (C.D.Cal.2013); Fed.R.Evid. 201(b).

addition to" federal requirements. *Riegel,* 552 U.S. at 321, 128 S.Ct. 999.

The Ninth Circuit's decision in *Stengel* indicates that there is no federal preemption under the MDA for a claim that a medical device manufacturer has failed in its "continuing duty to monitor the product after pre-market approval and to discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware and that or may be attributable to the product." *Stengel,* 704 F.3d at 1232. The Court noted that a failure to warn the FDA is a cognizable claim under the applicable state law—Arizona's in that case. *Id.* at 1233. And, as the concurrence to the opinion explains at length, a failure to warn the FDA also constitutes a violation of the FDA's own regulations, which require a manufacturer to file an Adverse Event Report with the FDA if it learned of information " 'reasonably suggest[ing]' that one of its devices '[m]ay have caused or contributed to a death or serious injury.' " *Stengel,* 704 F.3d at 1234 (quoting 21 C.F.R. § 803.50(a)) (Watford, J., concurring). The concurrence further notes that the state law duty alleged by the plaintiffs "seeks to hold [the manufacturer] accountable only for failing to do what federal law mandated—nothing more" and that it was therefore "precisely parallel to the duties imposed by federal law." *Id.* (citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

 As with Arizona law, California law creates a duty to warn parallel to 21 C.F.R. § 803.50(a), as a "device manufacturer can be found liable if it 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.' " *Coleman v. Medtronic, Inc.,* 223 Cal.App.4th 413, 428, 167 Cal.Rptr.3d 300 (2014) (quoting *Anderson v. Owens–Corning Fiberglass Corp.,* 53 Cal.3d 987, 1002, 281 Cal.Rptr. 528, 810 P.2d 549 (1991)). The California duty to warn does not solely run to doctors, but to the FDA as well. *Id.* at 429, 167 Cal.Rptr.3d 300.

 Here, Mr. Funke alleges that Sorin "failed to warn health care providers, including Plaintiff's physicians, Plaintiff and the FDA." (Compl.¶ 43.) Both *Stengel* and *Coleman* demonstrate that a claim alleging a device manufacturer's failure to warn the FDA of something FDA regulations required it to warn about is not preempted—such a failure is both contrary to FDA regulations and California tort law. Mr. Funke has not, however, demonstrated in his Complaint or briefing that a failure to warn him or his medical provider would constitute a violation of the FDCA or FDA regulations. Absent such a showing, it is expressly preempted under *Riegel.*

Similarly, Mr. Funke's allegation that "the labeling was proven to be false based upon the number of adverse events," (Pl.'s Opp'n Br. at 14), gives rise to preemption issues: he has not alleged that the labeling deviated from the labeling the FDA required under the PMA, and requiring labeling other than what the PMA required would be preempted under *Riegel,* as that would be "different from, or in addition to" federal requirements. Further, Mr. Funke misses the mark when he asserts the "[t]he discovery of information relating to device failures triggers state law duty to warn the doctors and patients. No federal regulations prohibit such warnings." (Pl.'s Opp'n Br. at 16.) A plaintiff cannot escape preemption with regard to a device that has gone through the PMA process under the MDA by asserting that federal law does not prohibit additional warnings. A state law claim can only escape preemption

if it is parallel to the federal law, meaning that the federal law itself *affirmatively* prohibits or requires the same conduct.

■ To bolster the claim in the Complaint that Sorin failed to warn the FDA—which is not preempted—Mr. Funke's briefing asserts that "on the FDA website, there are no adverse event reports [AERs] of incidents occurring prior to 2013. Unless the Mitroflow valve had a perfect track record prior to then, Defendant failed to report adverse events to [the] FDA." (Pl.'s Opp'n Br. at 13.) Sorin has, however, requested that the Court take judicial notice of a list of AERs pertaining to the Valve in the FDA's online MAUDE database, which tracks the submission of AERs related to medical devices. (Dkt.17.) MAUDE's list of AERs pertaining to the Valve is judicially noticeable as a public document available on the FDA website, and therefore "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Houston,* 957 F.Supp.2d at 1170 n. 1 (C.D.Cal.2013); Fed.R.Evid. 201(b). Accordingly the Court grants Sorin's request for judicial notice of the MAUDE list. This list demonstrates that AERs pertaining to the "Mitroflow Aortic PeriCardial Heart Valve" have been filed with FDA dating back to 2008, not 2013 as Mr. Funke had alleged. (Dkt. 17–1, Def.'s Ex. B, MAUDE database list of Valve-related AERs.)

In addition to asserting that no AERs were filed until 2013, Mr. Funke supports his failure to warn claim by asserting that scientific journals had reported that there had been failures in the Valve for "years prior" to his implantation with the Valve in 2008, and that Sorin "should have been aware of these complications and submitted [AERs] of incidents occurring prior to 2013." (Pl.'s Opp'n Br. at 13.) Sorin counters that the Valve first received pre-market approval in the United States on October 23, 2007, and that its post-market approval reporting obligations did not commence until that date. (Def.'s Br. at 12 (citing 21 C.F.R. § 814.82(a)(9); 21 C.F.R. § 803.10(c); 21 C.F.R. § 803.50; and 21 C.F.R. § 803.52).) Sorin argues that the device failures Mr. Funke alleged in his Complaint and his briefing all involved incidents occurring outside of the United States for which there was not FDA reporting obligation until after the date the PMA was issued, October 23, 2007. Mr. Funke has not cited any statute or regulation indicating that there is an obligation for Sorin to submit AERs for these events in its postmarket reporting.

Though *Stengel* and *Coleman* indicate that in some cases it is possible to plead a failure to warn claim that is not preempted, the Complaint as written lacks the necessary factual and legal support to maintain such a claim. Mr. Funke's assertion that no AER was filed until 2013 appears to be demonstrably false based on Sorin's judicially noticed MAUDE exhibit. And though Mr. Funke has alleged that Sorin should have been aware of complications concerning the devices "years prior" that had been discussed in medical literature and turned that information over to the FDA, Mr. Funke cites no federal statute or regulation indicating that Sorin was obligated to turn that material over to the FDA in its postmarket reporting when those incidents happened before the Valve was marketed in the United States, or that Sorin violated some other reporting requirement.

The Court is dismissing this claim with leave to amend in order to give Mr. Funke an opportunity to refine and clarify what he is alleging about Sorin's failure to warn. If he retains his allegations concerning the failure to warn a healthcare provider or the patient himself, he is advised to be

prepared to explain how such allegations can survive preemption.

### B. Strict Liability—Manufacturing Defect

■ Under California law, a manufacturing defect "is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull*, 20 Cal.3d 413, 429, 143 Cal.Rptr. 225, 573 P.2d 443 (1978). Here, Mr. Funke's Complaint alleges that "the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the Current Good Manufacturing Practice (CGMP) requirements of the Quality System (QS) regulations found at Title 21, Code of Federal Regulations (C.F.R.), Part 820." (Compl.¶ 13.) It further alleges that Sorin was "aware of [the] large number of reported events where the device failed with five years of placement and [was] aware that this was being contributed to by manufacturing processes and design issues relating to the cross stitches at the stent post and the darcon [sic] fabric, leading to abrasion, rubbing fatigue damage, and ultimately device failure." (Compl.¶ 19.) The Complaint also notes that the Valve removed from Mr. Funke was "found to have 'structural valve deterioration with calcification at the commissure posts as well as some degree ... of erosion of the leaflets." (Compl.¶ 26.) It further asserts that the Valve implanted in Mr. Funke "contained a manufacturing defect when it left Defendants' possession. The device differed from said Defendants' intended result and/or from other ostensibly identical units of the same product line." (Compl.¶ 53.)

Though the Complaint asserts an error in the manufacturing process, Mr. Funke's briefing in support has added an element of confusion by directing the Court to a scholarly article's finding that:

> Structural valve deterioration was observed in 100% of the Mitroflow pericardial valves that had been in place for more than 2 years. The high rate of para-stent post cusp tears, calcification, and tissue degeneration suggests a link to the design, likely associated with mechanical stress, in addition to abrasion with the cross sutures and Dacron fabric at the stent posts.

(Pl.'s Opp'n Br. at 17.) Mr. Funke has not indicated why it is permissible for the Court to consider this scholarly article at the motion to dismiss stage, as it is not clear that it was referenced in his Complaint and he has made no argument that is appropriate for the Court to take judicial notice of it. Nonetheless, the Court finds it appropriate to consider this excerpt from the article quoted in Mr. Funke's brief insofar as it suggests uncertainty on Mr. Funke's part as to whether he is pleading a design defect claim or a manufacturing defect claim.

[15] The quoted excerpt from the article indicates that there is a possible link between the design of the Valve and device failure. But because the FDA approved the design of the Valve as part of the PMA process and there is no allegation that Sorin had unilaterally altered the design of the Valve, an allegation that the device failed based on a flaw in is design is expressly preempted. *See Seedman v. Cochlear Americas*, 15–cv–366, 2015 WL 4768239, at *10 (C.D.Cal. August 10, 2015).

■ A defective manufacturing claim, however, is not preempted insofar as it alleges that the manufacturing of the device both fell short of the FDA's requirements for manufacturing and—based on the same deficiency—was defectively manufactured under California law. *Id.* at *9. Here, given the possible conflation of alle-

gations concerning manufacture and allegations concerning design, the Court concludes that it is appropriate to dismiss Mr. Funke's defective manufacturing claim, giving him leave to amend to determine whether the claim he is asserting is indeed a manufacturing defect rather than a design defect claim, and that he is in fact asserting that the manufacturing process employed in the making of the Valve deviated from FDA-approved standards.

The Court further notes that at the pleading stage it need only be plausible that a product defect at issue was the result of defective manufacturing rather than design. Though Sorin's briefing takes issue with the Seventh Circuit decision *Bausch v. Stryker Corp.*, this Court agrees with the *Bausch* Court's conclusion that district courts "must keep in mind that much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by federal law," and that as such, "formal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim." 630 F.3d 546, 558 (7th Cir. 2010). As the Complaint notes, Mr. Funke's device was returned to Sorin after it was removed from his body for investigation as to the cause of the failure, and Sorin has not released any information about the results of that investigation. (Compl.¶27.) As the Supreme Court has noted, Rule 12(b)(6)'s plausibility requirement "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. Mr. Funke need only assert a claim indicating that it is plausible that a manufacturing defect caused his injury, not that his injury was more likely to be the result of a manufacturing defect than a design defect. As the Seventh Circuit reasoned, "the victim of a genuinely defective product ... may not be able to determine without discovery and further investigation whether the problem is a design problem or a manufacturing problem." *Bausch*, 630 F.3d at 560.

## C. Negligence

Mr. Funke's Negligence claim asserts that Sorin was negligent in the "development; testing, design, manufacture, inspection, marketing, sale, and postmarketing surveillance" of the Valve. Though this is a lengthy list of allegations, the examples of negligent acts included in the Complaint, (Compl.¶35), break down fairly neatly into assertions of negligence concerning the broad categories of product manufacture, design, and warnings.

The Complaint asserts that Sorin has failed to "ensure that the device would be used in a safe and effective manner," in part through "failures to obtain adequate design input, as well as failure to test the device under reasonably foreseeable worst case conditions." (Compl.¶35a.) This appears to be a straightforward attack on the product's design, and the Court sees no way for Mr. Funke to proceed with a claim concerning negligent design absent an allegation that the design of the Valve deviated from the design that the FDA approved in its PMA. Such a claim is preempted for the same reason that a Strict Liability—Defective Design claim would be preempted. The FDA approved a particular design for the Valve and any design requirement in addition to or other than that approved design cannot proceed under *Riegel* and the MDA's preemption clause. The same is true of the allegation that Sorin failed "to take timely action to investigate and correct design ... problems revealed by device failures and need for re-operation." (Compl.¶35c.)

The Complaint also alleges that Sorin was negligent by "[f]ailing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would pre-

scribe, use, and implant the device." (Compl.¶35g.) But this assertion, too, is plainly preempted absent an allegation that the labeling on the product deviated from what the FDA approved or that a federal statute or regulation gives rise an affirmative obligation to warn doctors or end users directly other than with the information contained in that product label. Similarly, the assertion that Sorin was negligent by "[a]dvertising, marketing and recommending the use of the device, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the device" appears to be preempted insofar as it pertains to warnings to physicians or patients. *See Stengel,* 704 F.3d at 1234 (Watford, J., concurring). And though the manufacturer has a duty to warn the FDA itself under 21 C.F.R. § 803.50(a), as discussed above in the strict liability failure to warn section, it is appropriate to dismiss the claims pertaining to warning, as Mr. Funke's warning-related assertion about AERs appears to be inaccurate in light of the judicially noticed list of AERs in the FDA's MAUDE database.

The Court will dismiss Mr. Funke's Negligence claim with leave to amend, in order to give him the opportunity to assert how a negligent design claim would avoid preemption in this case, and to clarify his assertions concerning Sorin's failures with respect to warnings and manufacturing.

### D. Negligent Misrepresentation

The Complaint's Negligent Misrepresentation claim alleges that Sorin "made false representations to Plaintiff, Plaintiff's health care providers and the general medical community," specifically alleging that Sorin's "marketing and labeling materials, as well as verbal representations to the physician who ordered and implanted the device represented that it had 'excellent long-term clinical outcomes' and failed to provide any warning that the device exposed patients to a high risk of early device failure and the need for reoperation." (Compl.¶¶ 57–58.)

█ As discussed above in the section on Strict Liability—Failure to Warn, Mr. Funke has not identified any federal statute or regulation creating an affirmative duty to warn a health care providers or Mr. Funke himself of the dangers of a medical device that has undergone the PMA process above and beyond the requirement that the product labeling be in accord with what the FDA approved. Furthermore, Mr. Funke has not asserted that an allegedly negligent misrepresentation deviated from the FDA-mandated product labeling for the Valve: the Complaint indicates that Sorin's marketing materials and verbal representations to physicians were in accord with representations in the product's labeling concerning "excellent long-term clinical outcomes." It is difficult to understand how such representations could avoid preemption, given Mr. Funke's allegations that they were contained in (or consistent with) FDA-approved labeling. Accordingly, this claim is dismissed with leave to amend.

### E. Punitive Damages

Because Mr. Funke's claims pertaining to the design, manufacture, and warnings related to the Valve have been dismissed, his punitive damages claim that is based on those same allegations (Compl.¶¶ 65–67) will likewise be dismissed with leave to amend.[2]

---

**2.** Mr. Funke is reminded that "[w]ith respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ.Code § 3294(b).

## V. CONCLUSION

Accordingly, Plaintiff's claims are DISMISSED. Plaintiff is granted leave to amend and may file a First Amended Complaint within 30 days from today.